UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MELET WOLDEMARIAM,                                      :
                                                        :
                              Plaintiff,                :
                                                        :                    **ORDER**
            -against-                                   :
                                                        :            18 Civ. 297 (AMD) (VMS)
ALEX M. AZAR, II, as Secretary of the United           :
States Department of Health and Human Services,:
                                                        :
                              Defendant.[1]             :
                                                        :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

On January 16, 2018, Plaintiff commenced this action against Defendant, asserting claims

for (1) age discrimination, in violation of the Age Discrimination in Employment Act of 1967,

29 U.S.C. §§ 621 et seq. (the "ADEA"), and (2) discrimination "under all applicable paragraphs"

of, including the provisions for discrimination based on sex and national origin, and in violation

---

[1] Plaintiff Melet Woldemariam ("Plaintiff") initially named as Defendants Dr. Scott Gottlieb ("Dr. Gottlieb"), as Commissioner of the United States Food and Drug Administration (the "FDA"); the FDA; Eric D. Hargan ("Mr. Hargan"), as Secretary of the United States Department of Health and Human Services ("HHS"); and HHS (collectively with Dr. Gottlieb, the FDA, and Mr. Hargan, the "Original Defendants"). See generally ECF No. 1. Plaintiff and the Original Defendants stipulated to the dismissal of the action with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), as against Dr. Gottlieb, the FDA and HHS, and to the substitution of Alex M. Azar, II, as Secretary of HHS ("Defendant"), for Mr. Hargan, pursuant to Federal Rule of Civil Procedure 25(d). See generally ECF No. 22. The Court directed the Clerk of Court to update the caption accordingly. See ECF No. 25 at 4. As such, although Defendant has not raised the issue, the Court believes that Plaintiff's attempt to "amend[] [the caption] to name the new FDA Commissioner," as well as rename the FDA and HHS, is in error. ECF No. 84 at 1 (citation omitted). This part of the motion is denied.

Plaintiff's request to substitute Defendant for Xavier Becerra, as Secretary of HHS, is granted pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is respectfully requested to update the caption accordingly.

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").  See generally ECF No. 1.  Defendant answered.  See generally ECF No. 23.

Before the Court is Plaintiff's motion for leave to amend her complaint.  See generally ECF No. 84.  Defendant opposed.  See generally ECF No. 88.  For the reasons stated below, the motion is granted, except as noted in footnote 1, supra.

## I.    DISCUSSION

Federal Rule of Civil Procedure 15(a)(2) permits a party to "amend its pleading only with the opposing party's written consent or the court's leave," which "should freely [be] give[n] . . . when justice so requires."  The Rule sets forth "a liberal and permissive standard"; as such, "the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, [or] futility."  Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021) (citation & quotations omitted), cert. denied, 142 S.Ct. 1112 (2022).

### A    Whether Plaintiff's Proposed Amendments Are Futile

Concluding that proposed amendments are futile requires "a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies[2] or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To determine whether granting leave to amend would be futile, we consider the proposed amendments and the original complaint."  In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021) (citations & quotations omitted), cert. denied sub nom., Kirschner v. FitzSimons, 142 S.Ct. 1128 (2022).  Courts addressing motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most

---

[2] Neither Plaintiff nor Defendant raises any prior deficiencies.  See generally ECF Nos. 84 & 88. As such, the Court does not address this prong.

favorable to the plaintiff." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (citations omitted). This standard extends to dismissals for failure to exhaust administrative remedies. See McInerny v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) (stating that a "dismissal for failure to exhaust administrative remedies is more properly characterized as a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)," such that courts "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor" (citations & quotations omitted)). An action "is properly dismissed . . . when the complaint fails to state a claim to relief that is plausible on its face." Yusim v. U.S. Dep't of Hous. & Urb. Dev, 409 F. Supp. 3d 125, 128 (E.D.N.Y. 2018) (citation & quotations omitted); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Defendant raises two arguments as to whether Plaintiff's proposed amendments are futile: (1) whether Plaintiff failed to exhaust her administrative remedies and (2) whether Plaintiff plausibly stated proposed additional claims for retaliatory discharge. The Court addresses each in turn.

### i.       Whether Plaintiff Has Exhausted Her Administrative Remedies[3]

The Court addresses the positions of the parties, recites the applicable law and analyzes the law in deciding whether Plaintiff has exhausted her administrative remedies.

### a.       Positions Of The Parties

Plaintiff argues (1) that she is "authorized to pursue her additional claims under Title VII and the ADEA in this [C]ourt" pursuant to 29 C.F.R. § 1614.407, as 180 days have passed since

---

[3] The Court declines to accept Defendant's invitation to "find that Plaintiff is precluded from bringing any subsequent legal actions purportedly arising from her employment with HHS" on res judicata grounds. ECF No. 88 at 4 (citation omitted).

the filing of her complaint for retaliatory discharge before the Office of Equal Employment

Opportunity (the "OEEO") without final agency action, and (2) that, alternatively, she is

authorized to pursue her claims for retaliatory discharge without exhausting her administrative

remedies, as such claims are reasonably related to her original complaint filed before the OEEO.

ECF No. 88 at 2 (citation omitted).

Defendant counters (1) that "Plaintiff does not allege that she filed EEOC complaints

encompassing the assorted discrete alleged events she now seeks to allege in the PAC, and

indeed she did not," such that "she cannot pursue relief in this Court," and (2) that, "[a]s for her

termination, the EEOC case remains open, and Plaintiff's gamesmanship in seeking to obstruct it

for the purpose of seeking relief in this forum should not be rewarded."  ECF No. 88 at 4.  As to

the latter, more specifically, Defendant argues (a) that "Plaintiff has repeatedly refused to

respond to emails from the EEOC, even though complainants are warned that failure to

cooperate can result in the dismissal of their claims"; (b) that "Plaintiff has provided mixed

information to the EEOC about whether Mr. Wallace represents her in the EEOC action, thereby

stymying efforts to communicate with her"; and (c) that Plaintiff's contention that the "EEOC's

progress slowed due to an administrative backlog . . . fail[s] entirely to acknowledge Plaintiff's

role in the delays."  Id. (quotations omitted).[4]

---

[4] As the failure to exhaust is a waivable affirmative defense as to which Defendant bears the
burden of proof, the Court considers only the two "failure to exhaust" arguments raised by
Defendant.  See United States v. Sineneng-Smith, 140 S. Ct 1575, 1579 (2020) (noting that, "[i]n
our adversarial system of adjudication, we follow the principle of party presentation," and, "in
both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to
frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties
present[,] . . . normally decid[ing] only questions presented by the parties" (citations &
quotations omitted)).

ii.     **Applicable Law**

The administrative exhaustion requirement as to ADEA and Title VII claims is a

procedural prerequisite and does not affect subject matter jurisdiction.  See Fort Bend Cnty.,

Texas v. Davis, 139 S.Ct. 1843, 1850-51 (2019) (reasoning that "Title VII's charge-filing

requirement is not of jurisdictional case" and that, "[i]nstead, Title VII's charge-filing provisions

speak to . . . a party's procedural obligations . . . to submit information to the EEOC and to wait a

specified period before commencing a civil action" (citation & quotations omitted)); Young v.

Lord & Taylor, LLC, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013) (noting that "[i]t is well-settled

in the Second Circuit that a plaintiff may bring an employment discrimination action under Title

VII or the ADEA only after filing a timely charge with the EEOC or with a State or local agency

with authority to grant or seek relief from such practice" and that exhausting such "remedies is a

precondition to suit, rather than a jurisdictional requirement" (citations & quotations omitted)).

The defendants bear "the burden of pleading and proving . . . exhaustion," which "operates as an

affirmative defense."  Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 491 (2d Cir. 2018)

(placing the burden on the defendants in the context of Title VII claims); Curry-Malcolm v.

Rochester City School Dist., Nos. 21-2683 & 21-2700 (JMW) (PNL) (RJL), 2023 WL 3698213,

at *3 n.2 (2d Cir. May 30, 2023) (placing the burden on the defendants in the context of ADEA

claims).  As such, while "[a] claim-processing rule may be mandatory in the sense that a court

must enforce the rule if a party properly raise[s] it, . . . an objection based on a mandatory claim-

processing rule may be forfeited if the party asserting the rule waits too long to raise the point."

Fort Bend, 139 S. Ct. at 1849 (citations, quotations & footnote omitted).

As to the scope of the claims exhausted, claims are exhausted by express assertion in an

agency charge.  See Soules v. Connecticut, Dep't of Emergency Servs. and Public Protection,

882 F.3d 52, 57 (2d Cir. 2018) (citations omitted).  Nonetheless, "claims that were not asserted

before the EEOC may be pursued in a subsequent federal court action if they are reasonably

related to those that were filed with the agency," Buon v. Spindler, 65 F.4th 64, 77 (2d Cir.

2023), which represents "a limited, judge-made exception to . . . [the exhaustion] requirement,"

Duplan v. City of New York, 888 F.3d 612, 624 (2d Cir. 2018).  Unasserted

> [s]ubsequent conduct is reasonably related to conduct in an EEOC charge if: [1]
> the claim would fall within the reasonably expected scope of an EEOC
> investigation of the charges of discrimination; [2] it alleges retaliation for filing
> the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination
> carried out in precisely the same manner alleged in the EEOC charge.

Soules, 882 F.3d at 57 (citation & quotations omitted) (applying this holding in the Title VII

context (citation omitted)); Boonmalert v. City of New York, 721 F. App'x 29, 31 (2d Cir. 2018)

(applying this holding in the ADEA context as well (citation omitted)).  The "'reasonably

related' test is not limited to plaintiffs alleging post-charge conduct." Francis v. City of New

York, 235 F.3d 763, 766 (2d Cir. 2000) (footnote omitted).  The first category of "reasonably

related" conduct "is essentially an allowance of loose pleading[,] and is based on the recognition

that EEOC charges frequently are filled out by employees without the benefit of counsel and that

their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [s]he is

suffering," with the focus on "the factual allegations made in the EEOC charge itself and

whether they gave that agency adequate notice to investigate the claims subsequently asserted in

federal court." Kirkland-Hudson v. Mount Vernon City School Dist., No. 21 Civ. 695 (KMK),

2023 WL 2691622, at *6 (S.D.N.Y. Mar. 29, 2023) (citations & quotations omitted).  Claims for

failure to promote may fall within the scope of this first "reasonably related" test.  See Ximines

v. George Wingate High School, 516 F.3d 156, 158-159 (2d Cir. 2008) (stating that "the claim

that plaintiff was passed over for promotion in September 2004 on the basis of her age was not in

the EEOC Charge of Discrimination as it was sent to the defendants," reasoning that "the court

below properly could have entertained that claim only if it was reasonably related to those

asserted in the charge," and concluding that "the denial of leave to amend, insofar as it was based

on the district court's conclusion that plaintiff's EEOC charge did not include the September

2004 failure to promote, was erroneous," as (1) "the charge found in the EEOC file readily

reveals that a page or more concerning that particular attempt to gain promotion was missing

from the document and as (2) the "plaintiff's Charge of Discrimination, even without the final

page, made clear that she complained of age discrimination in several efforts to secure promotion

to assistant principal" and "referred also to the June 2004 interview for the permanent opening,"

such that, "even absent the last page, the charge gave the EEOC adequate notice to investigate

the plaintiff's grievance concerning the September 2004 promotion" (footnote omitted)).

As to the timing of the exhaustion in relation to the institution of a civil action, 29 C.F.R.

§ 1614.407 provides, in pertinent part, that

> [a] complainant who has filed an individual complaint . . . is authorized under title
> VII [and] the ADEA . . . to file a civil action in an appropriate United States
> District Court: (a) Within 90 days of receipt of the agency final action on an
> individual or class complaint; [or] (b) After 180 days from the date of filing an
> individual or class complaint if agency final action has not been taken.

### iii.    Analysis

Plaintiff first contacted the FDA's Office of Equal Employment Opportunity (the

"OEEO") on June 3, 2013, and she received notice of the right to file an individual formal

complaint of discrimination on September 28, 2013.  See ECF No. 84-3 at 1.  Plaintiff filed a

first individual formal complaint of employment discrimination, dated October 1, 2013, with the

OEEO (the "First OEEO Complaint").  See generally id.  The First OEEO Complaint cited

discrimination based on age, national origin and sex by Michael J. Palmieri, resulting in

Plaintiff's April 26, 2013 non-selection for "a professional level position" for which she applied

on February 8, 2013, and for which she was interviewed on March 7, 2013.  See id. at 2-3.  On

June 20, 2014, Plaintiff expanded the First OEEO Complaint "to include a claim for retaliation

for the present EEOC case when she received a significantly lower performance appraisal rating,

which included negative remarks about her behavior," and on September 4, 2014,

> to add claims for discrimination after Plaintiff was excluded from consideration
> from multiple Chemist positions . . . and multiple Microbiologist positions . . .
> that were limited to recent college graduates only," which "had the effect of
> improperly excluding individuals based on their older age, as well as constituted
> further discrimination and retaliation against her in that the Agency announced
> these positions in a manner what [sic] would intentionally exclude Complainant
> from consideration and selection.

ECF No. 84-1 ¶¶ 93-95.  On May 1, 2017, the OEEO "issued an order entering a judgment and

bench decision in favor of the FDA," after which Plaintiff commenced this action on January 16,

2018.  Id. ¶¶ 96-97.

Plaintiff again contacted the OEEO on June 6, 2022, and she received notice of the right

to file an individual formal complaint of discrimination on August 27, 2022.  See ECF No. 84-2

at 1.  On August 31, 2022, Plaintiff filed a second individual formal complaint of employment

discrimination with the OEEO (the "Second OEEO Complaint").  See generally id.  The Second

OEEO Complaint cited discrimination based on age, national origin and sex, as well as

retaliation and reprisal for the First OEEO Complaint and for this action, by John Leazer,

Dominique Stutts, Thomas Herbst, Albert Thompson and Melanie L. Bailey, leading to

harassment, pay issues and, ultimately, Plaintiff's termination.  See id. at 3-4.  On April 28,

2023, the OEEO informed Plaintiff's counsel, by letter, that it had concluded its investigation in

relation to Plaintiff's Second OEEO Complaint and requested that Plaintiff's counsel inform the

OEEO of how Plaintiff wished to proceed, in view of the pendency of this action.  See generally

ECF No. 92-1.  In a response dated May 12, 2023, Plaintiff's counsel informed the OEEO that

Plaintiff intended to pursue her claims in this action, rather than seek a final decision, with or

without a hearing, from the OEEO.  See generally ECF No. 92-2.

Defendant raises two arguments in relation to exhaustion: (1) Plaintiff's proposed

amended complaint seeks to add allegations beyond the scope of those exhausted in the First

OEEO Complaint, as amended, and (2) Plaintiff is responsible for the delay in the resolution of

the Second OEEO Complaint, such that she should not be permitted to take advantage of 29

C.F.R. § 1614.407 to add the retaliation claims included therein to this civil action.

### a.    Scope Of The First OEEO Complaint, As Amended

Defendant's first argument relating to exhaustion is that Plaintiff impermissibly seeks to

add allegations in her proposed amended complaint beyond the scope of those exhausted in the

First OEEO Complaint, as amended.  The allegations at issue fall into two categories: (1)

allegations relating to positions for which Plaintiff was not considered or selected and (2)

allegations relating to retaliatory actions arising from Plaintiff's related informal complaints.

### 1.    Plaintiff's Allegations As To Positions For Which She Was Not Considered Or Selected

The first category of allegations at issue, which pertain to positions for which Plaintiff

was not considered or selected, encompasses three subcategories of allegations: (1) that Plaintiff

was qualified but not selected for a variety of professional-level microbiologist and chemist

positions for which she applied, including twelve specifically identified positions for which she

applied in 2012 and 2013;[5] (2) that younger and less qualified applicants were selected for

---

[5] One such position was a biologist position.  See ECF No. 84-1 ¶ 77.  Neither Plaintiff nor
Defendant has raised whether a biologist position is distinct from a microbiologist position, and,
as such, the Court does not consider the issue.

professional-level positions, including twenty specifically named individuals, as well as five

unnamed interns, who were younger than Plaintiff and were appointed to professional-level

positions between 2008 and 2013; and (3) that Plaintiff was effectively working in such a role

but without the increased pay or title.  See ECF No. 84-1 ¶¶ 21-28, 72-82.

       The first subcategory of allegations, which pertains to Plaintiff's non-selection for certain

positions for which she applied, falls outside the scope of the First OEEO Complaint, as

amended, which is limited to (a) Plaintiff's April 26, 2013 non-selection, (b) retaliation in the

form of a lower work performance rating due to the filing of the First OEEO Complaint, and (c)

Plaintiff's exclusion from consideration for positions limited to recent college graduates.  See,

supra, p. 7.  In relation to point (c), Plaintiff's allegations in the proposed amended complaint

relate to positions for which Plaintiff was applied and was not selected, whereas Plaintiff's

allegations in the First OEEO Complaint, as amended, relate to positions for which Plaintiff did

not apply and was deemed unqualified at the outset.  Although not specifically alleged in the

First OEEO Complaint, as amended, Plaintiff's applications and non-selections for professional-

level positions, including the twelve specifically identified, are conduct reasonably related to the

conduct alleged in the First OEEO Complaint, satisfying the first and third "reasonably related"

tests, such that exhaustion is excused.  See, e.g., Groff v. Kyzmir, Nos. 95-9112(L), 95-9114, &

95-9116, 1996 WL 380418, at *2 (2d Cir. July 8, 1996) (concluding that the facts underlying the

"finding that Kyzmir 'induced [Meyers] to engage in sexual relations in exchange for his

favorable recommendation to the legislature that she be appointed to a permanent position'"

were reasonably related to "Meyers's EEOC charge[, which] stated . . . that '[o]n at least one

occasion an agent of the employer conditioned concrete employment benefits, to wit, continued

employment, upon my granting him sexual favors quid pro quo'" and "described Kyzmir's

requests that Meyers show her 'appreciation' of him," such that "[t]he incident . . . fell well within the scope of the EEOC investigation that could reasonably have been expected to grow out of the administrative complaint" (citation omitted)); <u>Soules</u>, 882 F.3d at 57 (rejecting the argument "that the termination claim does not allege discrimination carried out in precisely the same manner alleged in the EEOC charge," in view of the prior allegations "that defendants retaliated against Soules for filing a complaint, that the retaliation took the form of a disciplinary action, and that defendants were building a case for retaliatory termination" (citation & quotations omitted)).

The second subcategory of allegations, which pertains to the selection of younger and less qualified applicants, as compared to Plaintiff, for professional-level positions, was exhausted; it falls plainly within the scope of the First OEEO Complaint, as amended.

The third subcategory of allegations, which pertains to the incompatibility between the work performed by Plaintiff with her pay and title, was not exhausted in the First OEEO Complaint, as amended, but it was exhausted in Plaintiff's Second OEEO Complaint, in which she stated that she "worked from October 2008 to January 2012 as a regulatory Microbiologist and from February 2012 to April 26, 2022, as a regulatory Chemist analyst despite my title and pay status of being a lab technician on record." ECF No. 84-2 at 4.

### 2. Plaintiff's Allegations As To Retaliatory Actions Arising From Her Related Informal Complaints

The second category of allegations at issue, which pertain to retaliatory actions arising from Plaintiff's informal complaints regarding the appointment of twelve interns to full-time positions, can be divided into two time periods: (1) allegations as to conduct occurring prior to the filing of the First OEEO Complaint, as finally amended on September 4, 2014, and (2)

allegations as to conduct occurring subsequent to the filing of the First OEEO Complaint, as finally amended on September 4, 2014.[6]

Plaintiff's allegations as to conduct occurring prior to the filing of the First OEEO Complaint, as finally amended on September 4, 2014, are as follows: (1) depriving her, on April 24, 2012, "of a Quality Step Increase for the 2011 Performance Plan Development, Monitoring and Appraisal . . . Award" that she had earned due to her exceptional work performance rating in 2011; (2) in 2013 and 2014, denying her merit rate increases;[7] (3) in 2012 and 2013, downgrading her performance evaluations; and (4) denying her opportunities for advancement and offering pretextual reasons for doing so.  Id. ¶¶ 83, 86-90.  Plaintiff's first, second and fourth allegations were not exhausted, but they are excepted from the exhaustion requirement pursuant to the "reasonably related" test.  They satisfy the first "reasonably related" test for conduct reasonably expected to fall within the scope of the OEEO investigation, given that they represent consequences of the discrimination alleged in the First OEEO Complaint, as amended.  Plaintiff's third allegation was partially exhausted.  She expanded the First OEEO Complaint "to include a claim for retaliation for the present EEOC case when she received a significantly lower performance appraisal rating, which included negative remarks about her behavior," ECF No.

---

[6] In her proposed amended complaint, see ECF No. 84-1 ¶¶ 84-85, as in her original complaint, see ECF No. 1 ¶ 29, Plaintiff alleged her reassignment from the microbiology branch to the chemistry branch, albeit with more detail provided in the proposed amended complaint. Defendant incorrectly cites these allegations in her proposed amended complaint as "previously unpleaded allegations or reprisals."  ECF No. 88 at 3 (citation omitted).  In relation to the failure to exhaust, Defendant only objects to "the assorted discrete alleged events that [Plaintiff] . . . now seeks to allege in the PAC."  Id. at 4 (emphasis added).  As such, the Court does not construe Defendant's opposition to Plaintiff's motion for leave to amend the complaint as including these two sets of previously, and not newly, pleaded allegations.

[7] The Court includes the 2014 allegation here, as the record is unclear as to whether the 2014 denial of a merit rate increase took place before or after the September 4, 2014 amendment to the First OEEO Complaint.

84-1 ¶ 93; as such, one of the merit rate increase denials was exhausted.  As to the other,
Plaintiff's allegation satisfies the first "reasonably related" test for conduct reasonably expected
to fall within the scope of the OEEO investigation, given that it represents consequences of the
discrimination alleged in the First OEEO Complaint, as amended.

      Plaintiff's allegations as to conduct occurring subsequent to the filing of the First OEEO
Complaint, as finally amended on September 4, 2014, are as follows: (1) in 2014, 2016, and
2019, denying her merit rate increases;[8] (2) in 2019, downgrading her performance evaluations;
and (3) denying her opportunities for advancement and offering pretextual reasons for doing so.
Id. ¶¶ 83, 87-90.  Plaintiff's first, second and third allegations were not exhausted, but they are
excepted from the exhaustion requirement pursuant to the "reasonably related" test.  They satisfy
the second "reasonably related" test for retaliation arising from the filing of an agency charge.

### b.      Timing Of The Second OEEO Complaint

      Defendant's second argument relating to exhaustion is that Plaintiff is responsible for the
delay in the resolution of the Second OEEO Complaint, such that she should not be permitted to
take advantage of 29 C.F.R. § 1614.407 to add the retaliation claims included therein to this civil
action.

      Plaintiff filed the Second OEEO Complaint on August 31, 2022, see ECF No. 84-2 at 12-
13, and, as of April 28, 2023, has yet to receive a final decision thereon from the OEEO and is
unlikely to receive such a decision, in view of the pendency of this action, see generally ECF No.
92-1.  Therefore, as more than 180 days have passed since the filing of the Second OEEO
Complaint, pursuant to 29 C.F.R. § 1614.407(b), Plaintiff is authorized to assert the claims and

---

[8] The Court includes the 2014 allegation here, as the record is unclear as to whether the 2014
denial of a merit rate increase took place before or after the September 4, 2014 amendment to the
First OEEO Complaint.

underlying allegations raised therein in this action.  The Court does not credit Defendant's conclusory contention, unsupported by any citation to applicable law, that, because Plaintiff allegedly delayed the resolution of the Second OEEO Complaint, this Court should not enforce the plain language of 29 C.F.R. § 1614.407(b).

In any event, Plaintiff's attempt to exhaust her administrative remedies as to the claims and underlying allegations in the Second OEEO Complaint was superfluous, in view of the clear law in this Circuit that conduct in retaliation of the filing of an agency charge is "reasonably related" to the conduct raised in such charge, such that a new agency charge need not be filed, and such that the exhaustion requirement may be excused.  See Duplan v. City of New York, 888 F.3d 612, 622-23 (2d Cir. 2018) (reasoning that, "[i]n the paradigmatic case for which the 'reasonably related' doctrine was adopted, retaliation occurs while the EEOC charge is still pending before the agency," such "that the plaintiff may then sue in federal court on both the adverse actions that gave the impetus for the initial EEOC charge and the retaliation that occurred thereafter, even though no separate or amended EEOC charge encompassing the subsequent retaliation was ever filed" and noting that the Second Circuit has "also applied the 'reasonably related' doctrine to retaliation that occurs after the EEOC investigation is complete" (citation omitted)).

### ii.    Whether Plaintiff Has Stated Retaliation Claims Upon Which Relief May Be Granted

Defendant conclusorily asserts that "Plaintiff's proposed amendment is futile because she has not alleged plausibly any facts from which one could infer that her termination has any connection to, let alone is retaliation for, her choice to file this civil action in 2018."  ECF No. 88 at 4-5.  Plaintiff does not address this issue.  See generally ECF No. 84.  In spite of the barebones

nature of Defendant's argument, the Court will consider whether Plaintiff's proposed additional

claims for retaliation fail to satisfy the Rule 12(b)(6) standard such that they are futile.

The anti-retaliation provisions of Title VII and the ADEA have "no meaningful

difference."  Lively v. WAFRA Invest. Advisory Grp., 6 F.4th 293, 304 (2d Cir. 2021) (footnote

omitted).  Title VII similarly provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate
> against any of his employees or applicants for employment, for an employment
> agency, or joint labor-management committee controlling apprenticeship or other
> training or retraining, including on-the-job training programs, to discriminate
> against any individual, or for a labor organization to discriminate against any
> member thereof or applicant for membership, because he has opposed any
> practice made an unlawful employment practice by this subchapter, or because he
> has made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The ADEA similarly provides that

> [i]t shall be unlawful for an employer to discriminate against any of his
> employees or applicants for employment, for an employment agency to
> discriminate against any individual, or for a labor organization to discriminate
> against any member thereof or applicant for membership, because such
> individual, member or applicant for membership has opposed any practice made
> unlawful by this section, or because such individual, member or applicant for
> membership has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).  A pleading asserting a claim for retaliation under Title VII or the ADEA

must sufficiently allege "(1) participation in a protected activity; (2) that the defendant knew of

the protected activity; (3) an adverse employment action; and (4) a causal connection between

the protected activity and the adverse employment action."  Shultz v. Congregation Shearith

Israel of City of N.Y., 867 F.3d 298, 309 (2d Cir. 2017) (citation & quotations omitted); see also

Lively, 6 F.4th at 303 n.6 (citation omitted).

As to her Title VII claim, with respect to the first two elements, Plaintiff alleges that she

"engaged in protected activity under Title VII by opposing the employer's discriminatory

employment practices by, among other things, complaining of gender and/or race, national origin, and color discrimination to her managers and supervisors and by filing a charge of discrimination with the OEEO, and by initiating this lawsuit," ECF No. 84-1 ¶ 209; with respect to the latter two elements, Plaintiff alleges that

> Defendant[] intentionally violated Title VII by retaliating against the Plaintiff after she protested the discriminatory employment practices, among other things, by continuing to deny her advancement, transferring her to a less favorable location, altering for the worse the terms and conditions of her employment, downgrading her performance appraisals, denying her merit increases and other compensation, and then ultimately, by terminating her employment,

id. ¶ 210.  As to her ADEA claim, with respect to the first two elements, Plaintiff alleges that she "engaged in protected activity by opposing the employer's age discriminatory practices by, among other things, complaining to her managers and supervisors; [sic] by filing a charge of discrimination with the EEOC, and by initiating this lawsuit," id. ¶ 204; as to the latter two elements, Plaintiff alleges that

> Defendant[] intentionally violated the ADEA by retaliating against the Plaintiff after she protested Defendant['s] ageist discriminatory employment practices by, among other things, continuing to deny her advancement, transferring her a less favorable location, altering for the worse the terms and conditions of her employment, downgrading her performance appraisals, denying her merit increases and awards, and then ultimately, by terminating her employment,

id. ¶ 205.

That Plaintiff has sufficiently pleaded her engagement in a protected activity, Defendant's knowledge of the protected activity, and adverse employment action taken against Plaintiff is not in dispute.  See generally ECF Nos. 84 & 88.  As to the causation element, under both Title VII and the ADEA, Plaintiff must "plead but-for causation, which requires that the adverse action would not have occurred in the absence of the retaliatory motive" and "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the

protected activity." Lively, 6 F.4th at 304, 307 (citations & quotations omitted).  Plaintiff alleges

that she complained to various supervisory and human resources professionals as to her lack of

advancement in August 2010, March 2011, December 2011, and January 2012, after which she

(1) was reassigned from the microbiology branch to the chemistry branch, where she was

required to work long hours, with no payment of overtime or award of credit, as one senior

chemist had resigned and as another senior chemist was on an extended sick leave in either

January or February 2012; (2) was deprived of "of a Quality Step Increase for the 2011

Performance Plan Development, Monitoring and Appraisal . . . Award" that she had earned due

to her exceptional work performance rating in 2011; (3) was denied merit rate increases

beginning in 2013; and (4) received downgraded performance evaluations beginning in 2012.

ECF No. 84-1 ¶¶ 31, 34, 36-37, 39, 84-88.  Further, as to Plaintiff's initial termination on

October 31, 2021, which was rescinded and after which she was reinstated in February 2022, and

her ultimate termination on April 26, 2022, Plaintiff contends that, despite her multiple requests

and discussions between April 2020 and August 2021, the FDA refused to renew her facility

access card on the basis of various unfounded and pretextual reasons, as concealment for the

retaliation arising from Plaintiff's protected activity.  See id. ¶¶ 98-184.  Plaintiff alleges that the

temporal proximity of these actions to her protected activity and the lack of other bases for such

actions sufficiently shows causation.  As such, Plaintiff has sufficiently stated claims for

retaliation in violation of Title VII and the ADEA.

### B.   Whether Plaintiff's Proposed Amendment Is The Product Of Undue Delay, Bad Faith Or Dilatory Motive

Plaintiff contends (1) that she has not delayed, acted in bad faith, or been dilatory, as she

"was unable to move to amend previously to add the retaliatory discharge claims as Plaintiff

reasonably believed she had to exhaust her administrative remedies by filing a complaint with"

the OEEO, and (2) that Defendant will not suffer prejudice if Plaintiff is granted leave to amend, as (a) Defendant has "been aware for several years now of the multiple positions Plaintiff was passed over that she alleges was discriminatory," (b) "[n]o additional discovery will be required," and (c) "litigating Plaintiff's retaliation claims now in one lawsuit would be to Defendant['s] benefit and would preserve judicial resources."  ECF No. 84 at 1.

Defendant responds that "Plaintiff offers no explanation as to why allegations of retaliation spanning 2011 to 2019 "are being added at this late stage."  ECF No. 88 at 3 (citation omitted).  Defendant further argues that the "amendment would unfairly prejudice Defendant," in view of the discovery requested by Plaintiff.  See id. at 5.

With regard to undue delay, bad faith or dilatory motive, in view of the complex interaction between the First OEEO Complaint, as amended, the Second OEEO Complaint, and this action, the Court finds that Plaintiff has not engaged in intentional or strategic delay in seeking to assert her terminated-related retaliation claims but rather has diligently attempted to resolve the administrative law issues.  As to the earlier allegations of retaliation as to which Defendant complains, which are that Defendant retaliated by (1) transferring Plaintiff, on January 28, 2012, from the microbiology branch to the chemistry branch, where she was required to work long hours, with no payment of overtime or award of credit, as one senior chemist had resigned and as another senior chemist was on an extended sick leave; (2) depriving her, on April 24, 2012, "of a Quality Step Increase for the 2011 Performance Plan Development, Monitoring and Appraisal . . . Award" that she had earned due to her exceptional work performance rating in 2011; (3) denying her, in 2013, 2014, 2016, and 2019, merit rate increases; and (4) downgrading, in 2012, 2013, and 2019, her performance evaluations.  ECF No. 84-1 ¶¶ 84-98.  Defendant is incorrect that Plaintiff did not previously assert in the original complaint the first allegation

referenced; Plaintiff only added additional detail in the proposed amended complaint.  See ECF No. 1 ¶ 29; see ECF Nos. 84-1 ¶¶ 84-85.  While the second, third and fourth allegations could perhaps have been added to Plaintiff's original complaint sooner, "delay alone, unaccompanied by an additional declared reason, such as prejudice to the opposing party, usually does not warrant denial of leave to amend." State Farm Ins. Cos. v. Kop-Coat, Inc., 183 F. App'x 36, 38 (citation & quotations omitted).  As discussed below, as the only other basis raised by Defendant for denying leave to amend, namely prejudice due to additional discovery obligations, is not compelling, Plaintiff's delay does not preclude the proposed amendment.

With regard to prejudice, as Plaintiff has stated that she will not seek any additional discovery in relation to the proposed amendment, Defendant will not suffer any prejudice in this regard.

## III.    CONCLUSION

Plaintiff's motion for leave to amend is granted, except as noted in footnote 1, supra. Plaintiff is to file the amended complaint within seven days of the date of this Order.

Dated: Brooklyn, New York
       September 1, 2023

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge